UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ROLANDO PEREZ SANIC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner, Social Security ) <br> Administration, ) <br> ) <br> Defendant. ) | Case No.: 4:17-cv-1662-LCB |

**MEMORANDUM OPINION AND ORDER**

On September 27, 2017, Plaintiff, Rolando Perez Sanic, filed a complaint (Doc. 1) seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). On April 6, 2018, Plaintiff filed a brief in support (Doc. 9). On April 25, 2018, the Commissioner filed a Memorandum in Support (Doc. 10). Therefore, this matter is ripe for review. For the reasons stated below, the final decision of the Commissioner is affirmed.

**I. BACKGROUND**

On April 21, 2014, plaintiff filed application for benefits under Title II for a period of disability and disability insurance benefits under the Social Security Act alleging February 17, 2014, as his onset of disability. On February 18, 2016, the

administrative law judge ("ALJ"), Bruce W. MacKenzie, conducted a video hearing. The ALJ presided in Birmingham and the plaintiff appeared in Gadsden, Alabama. (Tr. 23). Plaintiff, his attorney, an interpreter, and vocational expert ("VE") were present at the hearing. (*Id*.). On August 31, 2016, the ALJ issued his decision. In doing so, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled. (*Id*. at 23-38). The ALJ made the following findings:

1. Claimant meets the insured status requirements of the Social Security Act through December 31, 2018, but not thereafter. (*Id*. at 25).

2. Claimant has not engaged in substantial gainful activity since February 17, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*). (*Id*.).

3. The claimant has the severe impairments of status post anterior cervical and fusion with post laminectomy syndrome; lumbar degenerative disc disease with LS disc bulge with stenosis; left shoulder AC arthritis and tendinosis; migraine headaches; and, vertigo (20 CFR 404.1520(c)). (*Id*.).

4. Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526). (*Id*. at 32).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he would require a sit/stand option with the retained ability to stay on or at a workstation in no less than 30 minute increments each without significant reduction of remaining on task. He is able to ambulate short distances up to 100 yards per instance on flat hard surfaces. He is able to frequently use left hand controls and his left hand is non-dominant. He is able to frequently reach overhead with the left non-dominant hand; can frequently climb ramps and stairs,

but never climb ladders or scaffolds; and can occasionally stoop, crouch, kneel, and crawl. He would be restricted from performing quick, rapid, or repetitive movements of the head to the left, right, up, or down, but can perform in occupations where head and neck movements are slow and self-paced. He should never be exposed to unprotected heights or operate commercial motor vehicles; would be limited to routine and repetitive tasks and simple work-related decisions; and in addition to normal workday breaks, he would be off task five percent of an eight hour workday (non-consecutive minutes). (*Id*. at 32-33).

6. The claimant is unable to perform any of the claimant's past relevant work (20 CFR 404.1565). (*Id.* at 36).

7. The claimant was born on June 15, 1976 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563). (*Id*.).

8. The claimant may not be able to communicate in English, and will be considered in the same way as an individual who is illiterate in English (20 CFR 404.1564). (*Id*.).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (*Id*.).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)). (*Id*.).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 17, 2014, through the date of this decision (20 CFR 404.1520(g)). (*Id*. at 37).

Plaintiff requested an appeal to the Appeals Council, which denied his request for review on July 26, 2017. (Tr. 1). At that point, the ALJ's decision

3

became the final decision of the Commissioner. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). Plaintiff then filed this action on September 27, 2017. (Doc. 1).

## II. DISCUSSION

The Social Security Act authorizes payment of disability insurance benefits and supplemental social security income to persons with disabilities. 42 U.S.C. §§ 423, 1381 (2012). The law defines disability as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).[1]

### A. Standard of Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal

---

[1] On January 18, 2017, the Social Security Administration significantly revised its regulations regarding the evaluation of medical evidence to determine a disability; those new regulations became effective on March 27, 2017. The Court, however, must apply the regulations in effect at the time that the ALJ entered his decision. *See Ashley v. Comm'r, Soc. Sec. Admin.*, 707 F. App'x 939, 944 n.6 (11th Cir. 2017) ("We apply the regulations in effect at the time of the ALJ's decision."). Because the ALJ entered his decision on August 31, 2016, the Court will apply the regulations in place at that time.

citation and quotation marks omitted). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the record as a whole, the Court must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

### B. Five-Step Sequential Evaluation

The Social Security Administration has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1. Is the claimant engaged in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step. *Id.*

2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significant limits his or her ability to perform basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step. *Id.*

3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step. *Id.*

5

4. Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step. *Id.*

5. Even if the claimant cannot perform past relevant work, does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled. *Id.*

The claimant bears the burden of proof with respect to the first four steps. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). The burden then shifts to the Commissioner at the fifth step to prove the existence of jobs in the national economy that the claimant is capable of performing; however, the burden of proving lack of RFC always remains with the claimant. *Id*.

### C. Plaintiff's Allegations

Plaintiff alleges in his complaint that the ALJ's finding of not disabled is erroneous for the following reasons:

1. The final decision of the Commissioner denying benefits to Plaintiff is not supported by substantial evidence; and

2. Plaintiff also alleges that the position of the Commissioner is not substantially justified.

(Doc 1, p. 1). Plaintiff argues in his brief that the ALJ should have given less weight to the opinions of his treating physicians under his worker's compensation claim. As a result, plaintiff argues that the ALJ failed to properly evaluate plaintiff's complaints of pain. The Court disagrees.

1. **Opinions of treating physicians**

Plaintiff's disability claim results from work related injuries to his neck and back. (Doc. 9). Plaintiff suffered three injuries while employed as a press operator, which is considered heavy work.[2] (Tr. 59). His injuries include one to the his low back and/or lumbar spine in 2006; second to his neck and/or cervical spine in 2011; and the third was an aggravation of the previous lower back injury in 2013. (Tr. 55-56). The injury in 2006 is mentioned in medical notes and testimony, but there are no treatment records regarding this injury. In March of 2012, Dr. Scholl[3] performed an anterior cervical discectomy and fusion on his neck. (Tr. 621-22). Dr. Scholl notes in May of 2012, that the procedure went well, found he was at maximum medical improvement (MMI), and released him back to work without restrictions. (Tr. 624). In March of 2013, Dr. Scholl gave the plaintiff a 25% permanent partial impairment (PPI) rating to the body as a whole and released him back to full activities without restrictions. (Tr. 291-92). Plaintiff returned to work without medical restrictions until February 17, 2014, when he stopped working and/or his date of onset. (Tr. 190, 200). Plaintiff requested and received a second opinion by Dr. Johnson in April of 2013. Dr. Johnson concurred with Dr. Scholl's rating and opinion to release him back to work without

---

[2] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(d).
[3] Dr. Scholl is a Board Certified Orthopedic Surgeon, per his deposition given in the workers' compensation case and attached to the record. (Tr. 284).

restriction. (Tr. 330). In March of 2014, he was treated by Dr. Jones for the injury to his lower back. (Tr. 344-350). Dr. Jones notes during this period that X-Rays are unremarkable, recommended physical therapy and no changes to his work status or limitations. (Tr. 550). In August of 2014, Dr. Jones referred plaintiff for a functional capacity exam (FCE). The FCE concluded that plaintiff was limited to medium work.[4] (Tr. 344-350). Based upon this exam, Dr. Jones on September 14, 2015, released the plaintiff back to work with the restrictions outlined in the FCE, reducing him to medium level work. (Tr. 344). The ALJ in this case afforded "great weight" to the opinions of Dr. Scholl, Dr. Johnson, and Dr. Jones who treated him for his work related injuries to his neck and back. (Tr. 35).

The plaintiff argues that the ALJ erred by giving "great weight" to these opinions. Specifically, stating that:

> "In Alabama, employees injured on the job are generally required to see providers designated by their employer or the employer's workers comp insurance carrier. See *Ala. Code* (1975), § 25-5-77(a). Because the workers comp system is adversarial, it follows that opinions from providers designated by the adverse party should be entitled to greater weight when favorable to the claimant and reviewed more carefully when unfavorable. See *Garcia v. Colvin*, 219 F.Supp.3d 1063, 1074 (D. Colorado 2016). In fact, the limitations provided in the workers compensation context are likely to overestimate the capability of the claimant so that he or she is not hindered in attempting to work. See further discussion *Garcia v. Colvin* at 1074."

---

[4] Medium work is defined as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

(Doc. 9, p. 14-15). Plaintiff cites the decision in *Garcia,* a U.S. District Court opinion from the 10th Circuit as legal precedent for his argument. In *Garcia* the court did address the weight given to opinions of treating physicians under workers' compensation, but under the Workers' Compensation Act of Colorado.[5] *Id.* at 1074. *Garcia* is not applicable here for two reasons: (1) it is based upon the analysis of Colorado workers' compensation law rather than Alabama workers' compensation law[6] and (2) a district court decision it is generally not binding on this court. Our Circuit as held that " [i]n cases involving questions of federal law the doctrine of stare decisis also implicates the binding nature of decisions rendered by one federal court over another. The general rule is that a district judge's decision neither binds another district judge nor binds him. . ." *McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004).

Notwithstanding, contrary to plaintiff's argument the court in *Garcia* is admonishing an ALJ for not giving "great weight" to the claimant's worker's compensation physicians. *Id.* at 1074. The ALJ in *Garcia* gave less weight and/or disregarded the opinions of the claimant's physicians operating under the Workers' Compensation Act of Colorado, in part, because their opinions were solicited by either the employer or the employee. The court in *Garcia* strongly disagreed by

---

[5] Workers' Compensation Act of Colorado C.R.S. § 8-41-101, et seq. (2016).
[6] Alabama Workers' Compensation Act, § 25–5–1 et seq., Ala. Code 1975.

9

reversing and remanding the case for an immediate award of benefits. *Id.* at 1075.[7]

This Circuit has held that the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997), citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) and *Broughton v. Heckler*, 776 F.2d 960, 961–62 (11th Cir. 1985). This reliance on a treating physician's opinion is consistent with the Commissioner's regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 CFR § 404.1527(d)(2). Conversely, an ALJ may give less weight or disregard the opinion of a treating physician altogether when the record substantially supports findings that "the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir.2004).

Plaintiff in this case essentially adopts the ALJ's position in *Garcia*, asserting that the opinions of treating physicians under the Alabama Workers'

---

[7] It should be noted that this was the second time this case had come before the district court having been remanded previously for the same reason. *Garcia* at 1070.

Compensation Act overstate a patient's abilities and/or are less credible because they ". . .come from employer-paid workers comp providers."  (Doc. 9, p.15). Hence, they should be given less weight than the opinions of other treating physicians operating outside of the workers' compensation system.  This proposition is not found in the social security regulations, statutes or case law. The plaintiff is only challenging the weight given by the ALJ to the workers' compensation medical opinions as they relate to his analysis of the plaintiff's complaints of pain.  More specifically, plaintiff is objecting to their opinions regarding the plaintiff's ability to return to work without restrictions, alleging that they disregarded his pain in their medical opinions.

Dr. Scholl, Dr. Johnson, and Dr. Jones are all medical professionals, orthopedic surgeons, who the claimant developed a significant treating relationship concerning the injuries in question.  Plaintiff filed a worker's compensation claim, accepted the treatment of these physicians and based upon their opinions and treatment returned to work without any restrictions until his onset date of February 17, 2014.  The opinions of these physicians are consistent with the objective medical evidence at the time the opinions were rendered.  Plaintiff has failed to present any evidence and/or "good cause" as at why their opinions should be given less weight or disregarded. *MacGregor v. Bowen,* 786 F.2d at 1053. Consequently, the weight given by the ALJ to these medical source opinions is

supported by substantial evidence.

## 2. Complaints of pain

Where a claimant attempts to establish disability, in part, based on subjective complaints of pain and other symptoms, he must show (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain arising from that condition; or (b) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the claimed pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); 20 C.F.R. §§ 404.1529(a), 416.929(a). If the objective medical evidence does not confirm the severity of the alleged pain, but indicates that a medically determinable impairment could reasonably be expected to produce the alleged symptoms (*i.e.*, 2(b)), the ALJ must evaluate the intensity and persistence of the claimant's symptoms and the extent to which they limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c), 416.929(c). In doing so, the ALJ must necessarily make credibility determinations regarding a claimant's reports of pain or other symptoms; if the ALJ discredits a claimant's subjective testimony, he must articulate his reasons for doing so. *Wilson*, 284 F.3d at 1225.

In evaluating the intensity and persistence of a claimant's symptoms, the ALJ will consider information submitted about same, including the individual's daily activities; location, duration, frequency, and intensity of the pain or other

symptoms; precipitating and aggravating symptoms; type/dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant has received for relief of pain or other symptoms; other measures used to relieve the symptoms; and any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 WL 374186 at *2.

In *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014), the court discussed credibility determinations as follows: "We have held that credibility determinations are the province of the ALJ, *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and we will not disturb a clearly articulated credibility finding supported by substantial evidence, *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) . . . 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted)." *See also Brito v. Comm'r, Soc. Sec. Admin.*, 687 Fed. Appx. 801, 803, (11th Cir. 2017).

Secondary to plaintiff's improper weight argument, plaintiff claims that the ALJ failed to correctly assess the plaintiff's level of pain. The ALJ's pertinent finding is as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 32-33). The ALJ found several inconsistencies between plaintiff's testimony regarding the intensity and persistence of his alleged symptoms and his level of functioning. (Tr. 33-36). For instance, plaintiff alleges disabling pain (continuing pain on an average level of 5/10 on good days and 9/10 on bad days); however, he submitted a disability function report wherein he states that he can lift 20 pounds, walk one (1) mile, drive up to 20 miles a day, and had no problems with personal care, going to church and school events. (Tr. 239-249). Further, at the hearing plaintiff gave conflicting testimony when asked to explain these day-to-day activities whereby he answered "I don't have activities because I'm at home. I don't have any other activities." (Tr. 57). Plaintiff's admitted exertional level and participation in these activities conflicts with his testimony at the hearing that his pain was at such a level as to prevent him from performing any gainful activity.[8]

Additionally, the ALJ supported his findings with substantial evidence by

---

[8] Courts have upheld an ALJ's adverse credibility determination when it was based in part on the claimant's ability to perform limited household chores. See, e.g., *Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 872–73 (11th Cir. 2016) ("Moreover, an ALJ properly may rely on a claimant's daily activities in making credibility determinations."); *Parks v. Comm'r of Soc. Sec.*, 353 F. App'x 194, 197 (11th Cir. 2009) ("The ALJ expressly based the credibility determination on Parks' ability to take care of her personal needs, including errands, driving, and attending church, and the fact that her medication was controlling her pain. The record supports the ALJ's conclusion because it shows Parks was able to cook, clean, run errands, drive, and attend church weekly. Additionally, medical evidence shows Parks' medication reasonably controlled her pain.").

citing numerous instances where the medical evidence did not support plaintiff's intensity and persistence of pain. The records of Dr. Scholl and Dr. Johnson do not reveal pain to the degree alleged by plaintiff for they both recommended that he could return to work without restrictions. (Tr. 302, 428). Likewise, Dr. Jones upon an FCE recommended in September of 2015, that plaintiff return to medium work without mention of pain to the degree alleged by plaintiff. (Tr. 344-350). The ALJ held that the restrictions by Dr. Jones were more consistent with light work and his order reflects light work with further restrictions as the plaintiff's current RFC. (Tr. 35). As noted earlier, there are no medical treatment records regarding the injury in 2006. Plaintiff's medical records from 2011 thru 2012, do not reveal any complaints of neck or back pain. (Tr. 378-399, 416-424). Medical imaging of the cervical and thoracic spine in 2013 and 2014 were normal without disc herniation or spinal stenosis. (Tr. 433-434, 476, 478, 492, 493). The ALJ notes one MRI of the lumbar spine in November of 2014, showing a disk bulge and stenosis. (Tr. 538). Other than this MRI, all other objective testing fails to support the level of pain alleged by the plaintiff.

The ALJ did a comprehensive review of the longitudinal treatment record and specifically addressed the weight given to each medical source. The ALJ states that there is "no evidence that any treating physician has reported that the claimant had disabling pain or limitations." (Tr. 34). Again, plaintiff has not

15

contested the weight given by the ALJ to any of the other medical source opinions. The ALJ found that the plaintiff had pain, just not to the level that he could no longer perform any gainful activity and/or light work with restrictions. In sum, there is substantial evidence to support the ALJ's finding of not disabled. Therefore, the Court finds no error here.

## III. CONCLUSION

For these reasons, and the Court otherwise being otherwise sufficiently advised, it is ORDERED that the final decision of the Commissioner is AFFIRMED. A final judgment will be entered separately.

**DONE** this January 23, 2019.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE